# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:10CR389 |
| | ) | |
| | ) | |
| | ) | JUDGE SARA LIOI |
| PLAINTIFF, | ) | |
| vs. | ) | |
| | ) | OPINION & ORDER |
| | ) | |
| SAMIR MOHAMMAD, | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Defendants Samir Mohammad and Hamdi "Sam" Qasem have filed a series of pre-trial motions in this matter, several of which touch upon discovery issue and will be addressed in this Opinion and Order. Specially, the Court shall address herein: defendant Mohammad's motion to compel discovery and disclosure of evidence concerning government witnesses (Doc. No. 76); defendant Mohammad's motion for disclosure or judicial review of grand jury transcripts (Doc. No. 78); defendant Mohammad's motion to require the government to divulge consideration given to prosecution witnesses (Doc. No. 79); defendant Mohammad's motion to produce statements of persons who are not government witnesses (Doc. No. 82); defendant Qasem's motion for release of *Brady* materials of persons who will not be government witnesses (Doc. No. 85); and defendant Qasem's motion for disclosure of consideration or promises given to prosecution witnesses (Doc. No. 87). The Court will also address

defendant Mohammad's motion in limine (Doc. No. 102). All of these motions are fully briefed, and are ripe for decision.

### 1. Defendant Mohammad's Motion to Compel Discovery and Disclosure Concerning Government Witnesses

Defendant Mohammad seeks an order compelling the government to provide early disclosure of discovery under the Jencks Act, 18 U.S.C. § 3500, *Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150 (1972). (Doc. No. 76.) The government has filed an opposition. (Doc. No. 89.)

According to Mohammad, "[e]arly disclosure of discovery, Brady, Giglio and Jencks material should be a matter of routine practice by the government." (Doc. No. 76 at 2.) Mohammad insists that the need for early disclosure is even more important in the present case where there are "literally thousands of documents and wiretaps." (*Id.*) With respect to Jencks Act material, Mohammad believes that early disclosure of FBI 302 statements will assist the defendants in adequately preparing for trial, as well as "serve the public interest in expediting the fair resolution of criminal cases." (*Id.* at 3.) Notwithstanding what Mohammad views as a clear need for early discovery, he claims that he has yet to receive "one iota of discovery" from the government since the filing of the Superseding Indictment on March 30, 2011 and the Second Superseding Indictment on September 7, 2011. (*Id.* at 2.) He seeks immediate disclosure of all outstanding discovery, as well as the immediate disclosure of all *Brady*, *Giglio*, and Jencks Act material.

2

The government represents that it is aware of its ongoing discovery obligations, and underscores the fact that defendants have already received substantial discovery. It reports that on December 23, 2010, an external hard drive with all discovery materials (in a searchable format with indices) relative to defendant Mohammad was provided to counsel. At the time of disclosure, defense counsel was provided instruction in how to navigate the hard drive to review the discovery provided. The government explains that no additional discovery was produced immediately after the filing of the Superseding or Second Superseding Indictments because there was no additional discovery that had not been previously disclosed. With respect to *Giglio,* the government observes that defendants already have access to much of the information, noting that the government has entered into plea agreements with numerous witnesses, and each of these agreements has become publically available after it was accepted by the court.[1] Further, as has been its practice in related trials, the government indicates that it will likely produce some of the Jencks Act material in advance of trial. "In all cases, the statement will be provided before the witness testifies and early enough to avoid any trial delay." (Doc. No. 89 at 5.)

The Court begins with Mohammad's request for early Jencks Act material. Under Rule 26.2, which incorporates the Jencks Act in the Federal Rules of Criminal Procedure, after a witness has testified on direct examination, the government or the defendant may seek an order requiring the disclosure of any pretrial statements of the

---

[1] The government further notes that anticipated government witnesses, Frank Russo and Daniel Gallagher, have previously testified in open court regarding their plea agreements.

witness if the statements are in the possession of the party calling the witness and relate to the subject matter of the witness's testimony. FED. R. CRIM. P. 26.2(a); *see also* 18 U.S.C. § 3500.

While it is true that early disclosure of Jencks material "avoids the inevitable delay of the trial when the material is withheld until the witness concludes his direct examination[,]" *United States v. Minksy*, 963 F.2d 870, 876 (6th Cir. 1992), the government has the right under the Jencks Act to withhold such material until the witness has testified on direct. *See id.; United States v. Brazil*, 395 F. App'x 205, 215 (6th Cir. 2010); 18 U.S.C. § 3500(b); *see also United States v. Presser*, 844 F.2d 1275, 1283 (6th Cir. 1988) ("The clear and consistent rule of this circuit is that the intent of Congress expressed in the Act must be adhered to and, thus, the government may not be compelled to disclose Jencks Act material before trial.").

The Court DENIES defendant Mohammad's request for early Jencks disclosure, but encourages the government to consider pretrial disclosure of all Jencks material in order to ensure that there are no unnecessary delays at trial.

With respect to all other discovery, it is clear from the record that the defendants have already received substantial discovery.[2] It is equally clear that the government has, to date, met its discovery obligations, and has represented that it will turn over all *Giglio* and *Brady* materials in time for effective use at trial. *See United*

---

[2] To the extent that Mohammad's request encompasses materials that would qualify as both *Brady* and Jencks Act materials, disclosure is governed by the limitations imposed by the Jencks Act. *See United States v. Bencs,* 28 F.3d 555, 561 (6th Cir. 2008) (quoting *United States v. Davis*, 306 F.3d 398, 421 (6th Cir. 1994) (" 'When *Brady* material sought by a defendant is covered by the Jencks Act…the terms of that Act govern the timing of the government's disclosure.' ")).

4

*States v. Farley*, 2 F.3d 645, 654 (6th Cir. 1993) (citing *Presser*, 844 F.2d at 1284) ("due process requires only that disclosure of exculpatory material be made in sufficient time to permit the defendant to make effective use of that material at trial"). While the Court encourages the government to identify and disclose all relevant discovery materials as early as possible, defendant Mohammad's vague complaints fail to demonstrate a need for an order requiring the immediate disclosure of all evidentiary materials.[3]

For all of the foregoing reasons, and subject to the government's continuing discovery obligations, the motion to compel early discovery is DENIED.[4] Notwithstanding this ruling, the Court fully expects the parties to work together to ensure that all discovery obligations, on both sides, are honored in a timely manner. The Court also expects the parties to advise the Court immediately if any discovery disputes arise.

---

[3] Should Mohammad's motion be interpreted as seeking an order requiring the government to identify *Brady* material amidst the evidence which has already been disclosed, that request is also denied. *See United States v. Warshak*, 631 F.3d 266, 297-98 (6th Cir. 2010) (rejecting claim that the government must separately identify *Brady* material). Relying on the Fifth Circuit's decision in *United States v. Skilling*, 554 F.3d 529 (5th Cir. 2009), *vacated in part on other grounds*, 130 S. Ct. 2896 (2010), the Sixth Circuit in *Warshak* rejected an argument that the government had abdicated its duties under *Brady* by "simply handing over millions of pages of evidence and forcing the defense to find any exculpatory information contained therein." *Warshak*, 631 F.3d at 297. Finding no evidence that the government had responded to its *Brady* duties in bad faith, nor any indication that the government had "larded its production with entirely irrelevant documents," it denied the defendant's *Brady* claim. *Id*. at 297-98. Likewise, while the discovery in this case has been voluminous, the defendants have offered no evidence, nor even suggested, that the government has acted in bad faith in fulfilling its discovery obligations.

[4] Defendant Mohammad also moves to reserve the right to "amend, add and create additional motions past the discovery deadline of February 10, 2012." (Doc. No. 81 at 1.) The motion is based on the fact that Mohammad had not received any additional discovery since the filing of the Superseding and Second Superseding Indictments. For the reasons already set forth above, this motion is also DENIED.

### 2. Defendants' Motions to Compel Production of Statements of Persons Who are not Government Witnesses

Without providing any legal basis for the request, beyond the general discovery obligations set forth in *Brady*, both defendants move for the production of all statements made by persons whom the government does not intend to call as witnesses. (Doc. Nos. 82, 85.) The government opposes these motions, positing that defendants are not entitled to any such evidence. (Doc. Nos. 95, 96.) The Court agrees.

Rule 16(a)(2) of the Federal Rules of Criminal Procedure specifically states that it does not authorize "the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500." Section 3500, otherwise known as the Jencks Act, in turn, covers the production of statements and reports of government witnesses and does not provide for the production of statements by individuals the government does not intend to call.[5] *See United States v. Shyne*, 617 F.3d 103, 105 (2d Cir. 2010) ("the disclosure requirements of the Jencks Act, 18 U.S.C. § 3500, do not apply to non-testifying declarants"); *United States v. Schier*, 438 F.3d 1104, 1112 (11th Cir. 2006) ("Plainly, the Jencks Act does not apply to the statements of non-testifying witnesses.").

The Court finds no rule or statute that would require the government to comply with defendants' request. Further, to the extent that these requests trigger the government's production obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), the

---

[5] Section 3500(b) provides, in relevant part: "After a witness called by the United States has testified on direct examination, the court shall, on motion of the defendant, order the United States to produce any statement […] of the witness in the possession of the United States which relates to the subject matter as to which the witness has testified."

Jencks Act, 18 U.S.C. § 3500, or *Giglio v. United States*, 405 U.S. 150 (1972), the government has indicated that it is mindful of its discovery obligations and intends to meet them.

Finding no basis to support the defendants' discovery requests, the motions are DENIED.

### 3. Defendants' Motions to Divulge Any Consideration Given to Cooperating Witnesses

Both defendants seek an order compelling the government to reveal any and all agreements, consideration, or promises extended to prospective witnesses in exchange for assistance and/or testimony. (Doc. Nos. 79, 87.) The government has responded to each motion. (Doc. Nos. 92, 98.)

The government observes that the defendants' motions do nothing more than request that the government honor its obligations under *Giglio*, which, the government contends, it has every intention of doing. According to the government, defendants already have access to much of the requested information, as most deals have become publicly available after the Court accepted each agreement. The Court is satisfied with the government's representation that it will honor its discovery obligations in a timely manner. Thus, subject to the understanding that the government's obligation is a continuing one, defendants' motions are DENIED.

### 4. Defendant Mohammad's Motion for Disclosure of Grand Jury Transcripts

Defendant Mohammad moves for the disclosure of all grand jury

7

transcripts that contain testimony regarding employment in the Cuyahoga County Auditor's Office. (Doc. No. 78.) In the alternative, he seeks judicial review of the same transcripts. The government has filed a response. (Doc. No. 91.)  In support of his request, Mohammad maintains that while certain witnesses were called by the government to demonstrate that they paid for their positions in the auditor's office, his investigation has revealed that "several Grand Jury witnesses not only denied the allegations but provided reasons on how they obtained their jobs or pay raises." (Doc. No. 78 at 2.) Because Mohammad is also alleged to have paid for his position with the county auditor, he believes that the testimony of these witnesses would be exculpatory.[6] He specifically seeks the transcripts of the testimony of Abdallah Jaber, Hanan Hdada (sic), Tina Kish, and Ahmad Hamo, as well as the transcript of any other witness that might have provided similar testimony. (Doc. No. 78 at 2.)

A party seeking disclosure of grand jury material under Rule 6(e) of the Federal Rules of Criminal Procedure must demonstrate a particularized need. *See Douglas Oil Co. v. Petrol Stops Northwest*, 441 U.S. 211, 221 (1979). To meet the particularized need standard, a party must establish that: (1) the material sought is necessary to avoid a possible injustice in another judicial proceeding; (2) the need for disclosure outweighs the need for continued secrecy; and (3) the request is structured narrowly to cover only the material needed. *See id.* at 222. The district court has considerable discretion in determining whether to require disclosure of grand jury

---

[6] It does not appear that Mohammad is seeking disclosure of the grand jury transcripts to demonstrate an irregularity in the grand jury proceedings, or to establish that the indictment returned by the grand jury is deficient.

proceedings. *See id.* at 222*; In re Antitrust Grand Jury*, 805 F.2d 155, 161 (6th Cir. 1986). "It is clear that the burden [of demonstrating the need for disclosure] is a heavy one to overcome." *Lucas v. Turner*, 725 F.2d 1095, 1101 (7th Cir. 1984).

According to the government, Mohammad has not met his burden of proof. It maintains that the fact that others denied paying for their jobs and/or job advancements in the auditor's office amounts to improper "reverse 404(b)" evidence and improper character evidence. Because such evidence is not relevant, the government contends that it would not be admissible at trial. To the extent that such statements are exculpatory, the government notes that it is aware of its *Brady* obligations and will honor them. The government also represents that should a grand jury witness testify at trial and trigger a *Giglio* or Jencks Act disclosure, the government will make the required disclosure at the appropriate time.

The Court agrees that the testimony Mohammad seeks to have disclosed would not likely be relevant. *See United States v. Dobbs*, 506 F.2d 445, 447 (6th Cir. 1975) ("evidence of noncriminal conduct to negate the inference of criminal conduct is generally irrelevant"); *see, e.g., United States v. Daulton,* 266 F. App'x 381, 386 (6th Cir. 2008) (evidence of non-fraudulent tax returns for certain years was properly excluded as it was not relevant to question of whether the defendant had filed fraudulent returns for the years charged in the indictment); *United States v. Williams*, 205 F.3d 23, 34 (2d Cir. 2000) (evidence of no criminal activity on certain trips to Jamaica was not admissible to show no criminal conduct on other trips). While "a defendant can introduce evidence of someone else's conduct if it tends to negate the defendant's guilt[,]" *United States v.*

*Rose*, 403 F.3d 891, 901 (7th Cir. 2005) (internal citation and quotation omitted), the fact that others under certain circumstances may not have paid for their positions with, or promotions within, the auditor's office does not make it any more or less likely that Mohammad likewise did not pay for his position.

Because Mohammad seeks testimony that would likely not be relevant at trial, he has failed to demonstrate that the material sought is necessary to avoid a possible injustice in another judicial proceeding, or that the need for disclosure outweighs the interest in secrecy of such proceedings. *See, e.g., United States v. Capozzi*, 486 F.3d 711, 727 (1st Cir. 2007) (no particularized need demonstrated for release of grand jury transcripts where the material was sought for a non-justiciable issue); *see also United States v. Ruggles*, 1985 U.S. App. LEXIS 25692, at *20-*21 (6th Cir. Dec. 23, 1985) (failure to disclose grand jury testimony of government witness until after the witness testified on direct did not constitute a *Brady* violation where the grand jury testimony was not exculpatory). For these reasons, defendant Mohammad's motion for immediate release of grand jury transcripts is DENIED.

### 5. Defendant Mohammad's Motion in Limine

In his motion in limine, defendant Mohammad seeks an order precluding government witnesses from testifying to anything Kevin Payne or Anthony Ma might have said before their deaths. (Doc. No. 102.) Mohammad insists that any such testimony would be inadmissible hearsay. The government has filed a response. (Doc. No. 103.)

Although not explicitly authorized by the Federal Rules of Evidence or the

Federal Rules of Criminal Procedure, the practice of ruling on motions in limine "has developed pursuant to the district court's inherent authority to manage the course of trials." *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984). Motions in limine allow the court to rule on evidentiary issues prior to trial in order to avoid delay and focus pertinent issues for the jury's consideration. *See United States v. Brawner*, 173 F.3d 966, 970 (6th Cir. 1999); *Jonasson v. Lutheran Child & Family Servs.*, 115 F.3d 436, 440 (7th Cir. 1997).

Courts should exclude evidence on a motion in limine only when it is clearly inadmissible. *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F. Supp. 2d 844, 846 (N.D. Ohio 2004). If the court is unable to determine whether or not certain evidence is clearly inadmissible, it should defer ruling until trial so that questions of foundation, relevancy, and potential prejudice can be evaluated in proper context. *Id*. Ultimately, the determination whether to grant or deny a motion in limine is within the sound discretion of the trial court. *Goldman v. Healthcare Mgmt. Sys., Inc.*, 559 F. Supp. 2d 853, 858 (W.D. Mich. 2008) (citing *United States v. Certain Lands Situated in the City of Detroit*, 547 F. Supp. 680, 681 (E.D. Mich. 1982)). In limine rulings are preliminary, and the district court may change its ruling at trial for any reason it deems appropriate. *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

All relevant evidence is admissible and evidence that is not relevant is not admissible. FED. R. EVID. 402. "Evidence is relevant if (a) it has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." FED. R. EVID. 401. The relevancy standard is

11

liberal. *Daubert v. Merrell Dow Pharms., Inc*. 509 U.S. 579, 587 (1993). Relevant evidence, however, may be excluded if its "probative value is substantially outweighed by the danger of one of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403.

It is the government's position that statements made by Payne and Ma, to the extent they were made in furtherance of a conspiracy, would be admissible as co-conspirator statements. Rule 801(d)(2)(E) of the Federal Rules of Evidence permits the admission of statements made by co-conspirators provided the government can show by a preponderance of the evidence (1) that a conspiracy existed, (2) that the defendant against whom the statement is offered was a member of the conspiracy, and (3) that the statement was made during the course of and in furtherance of the conspiracy. *See United States v. Vinson*, 606 F.2d 149, 152 (6th Cir. 1979). This preliminary finding is made by the trial judge, FED. R. EVID. 104(a), and with respect to this determination, the Court has considerable discretion "in controlling the mode and order of proof." *Vinson*, 606 F.2d at 152. The fact that a given statement came from a now deceased co-conspirator does not provide a basis for exclusion. *See United States v. Centracchio,* 265 F.3d 518, 531 (7th Cir. 2001), *overruled on other grounds by, Crawford v. Washington*, 541 U.S. 36 (2004); *see also United States v. Allen*, 425 F.3d 1231, 1235 (9th Cir. 2005) ("co-conspirator statements are not testimonial" and therefore do not violate the Confrontation Clause); *United States v. Martinez*, 430 F.3d 317, 328-29 (6th Cir. 2005), *cert. denied*, 547 U.S. 1034 (2006) (same).

There are several options available to the trial judge. First, the court could conduct a "mini-hearing" outside the presence of the jury, where the court receives proof of the conspiracy and makes a preliminary finding. *See Vinson*, 606 F.2d at 152; *United States v. Enright*, 579 F.2d 980, 986-87 (6th Cir. 1978). If the court finds that the statements are properly admitted as statements of co-conspirators, the evidence is presented to the jury. "While the Sixth Circuit has acknowledged that a trial judge has the discretion to order the proof in this manner, it has also recognized that 'this procedure has been criticized as burdensome, time-consuming, and uneconomic.' " *See United States v. Coffman*, No. 09CR181, 2010 U.S. Dist. LEXIS, at *3 (E.D. Ky. Sept. 29, 2010) (quoting *Vinson*, 606 F.2d at 152).

Second, the court can "require the government to meet its initial burden by producing the non-hearsay evidence of conspiracy first prior to making the *Enright* finding concerning the hearsay's admissibility." *Vinson*, 606 F.2d at 152. This option "clearly avoids 'the danger . . . of injecting the record with inadmissible hearsay in anticipation of proof of a conspiracy which never materializes.' " *Id*. at 152-53 (quoting *United States v. Macklin*, 573 F.2d 1046, 1049 n.3 (8th Cir.), *cert. denied*, 439 U.S. 852 (1978)).

A third, and final, option permits a trial court to conditionally "admit the hearsay statements subject to later demonstration of their admissibility by a preponderance of the evidence." *Vinson*, 606 F.2d at 153. The danger in this option is that if the government fails to carry its burden as to the conspiracy, the trial court "should, on the defendant's motion, declare a mistrial unless convinced that a cautionary jury

13

instruction would shield the defendant from prejudice." *Vinson*, 606 F.2d at 153. Nonetheless, the Sixth Circuit has approved of this final approach, recognizing that it is "firmly entrenched in this circuit's practice." *United States v. Holloway*, 740 F.2d 1373, 1375 n.2 (6th Cir. 1984).

Given the inherent complexity of conspiracies, as well as the Court's past experience with trials arising out of the same federal investigation, the Court finds that a full evidentiary hearing would be cumbersome and would unnecessarily add considerable length to the trial. Instead, the Court selects the third approach and shall conditionally admit any and all alleged co-conspirator statements subject to a ruling on admissibility at the close of the government's case-in-chief. The Court finds that this approach will preserve judicial resources, while also permitting the Court "to rely on the hearsay statements themselves to determine whether the statements are admissible under FED. R. EVID. 801(d)(2)(E)." *United States v. Estrada*, Nos. 86-3695, 86-3697, 1987 U.S. Dist. LEXIS 12712, at *10 (6th Cir. Sept. 24, 1987) (approving of such an approach and citing various authorities, including *Bourjaily v. United States*, 483 U.S. 171 (1987)).

Because any statements of Ma and Payne that are offered as co-conspirator statements will be conditionally admitted, subject to a later determination by the Court as to their admissibility, Mohammad's motion in limine to exclude these statements is DENIED.

*Conclusion*

For all of the foregoing reasons, and subject to the government's continuing discovery obligations, the above-mentioned discovery motions (Doc. Nos. 76, 78, 79, 81, 82, 85, 87) are DENIED. Defendant Mohammad's motion in limine (Doc. No. 102) is also DENIED.

**IT IS SO ORDERED**.

Dated: May 8, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**