# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.  1:10CR389 |
| | ) | |
| | ) | |
| | ) | JUDGE SARA LIOI |
| PLAINTIFF, | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| | ) | |
| SAMIR MOHAMMAD, et al., | ) | |
| | ) | |
| | ) | |
| DEFENDANTS. | ) | |

Before the Court are a series of pre-trial motions filed by defendant Hamdi ("Sam") Qasem. Specifically, the Court will address herein: defendant Qasem's motion for his co-defendant, Samir Mohammad, to be tried on Counts Two through Five in a separate proceeding (Doc. No. 120); Qasem's motion for a bill of particulars (Doc. No. 122); and Qasem's motion to transfer (Doc. No. 124). All motions are fully briefed, and are ripe for disposition.

*Background*

On September 14, 2010, an indictment was returned against defendant Mohammad. (Doc. No. 1.) The charges stemmed from an FBI investigation, conducted over a number of years, into allegations of public corruption and conspiracy in Cuyahoga County, Ohio. This initial charging instrument charged Mohammad with conspiracy to

commit bribery concerning programs receiving federal funds, Hobbs Act conspiracy, tampering with a witness, and making false statements to law enforcement.

According to the indictment, Mohammad served in several positions within the county, and, from April 15, 2004 until in or around 2010, served as the deputy auditor for the Cuyahoga County Auditor's Office. It was alleged that Mohammad, with the assistance of other county employees, engaged in a conspiracy whereby county employees demanded and accepted things of value in connection with the awarding of county contracts. It was further alleged that, once the federal government began its public corruption investigation, Mohammad attempted to influence the testimony of a grand jury witness. Also in connection with the federal government's investigation, it was alleged that Mohammad lied in an interview with the FBI.

A superseding indictment was returned by the grand jury on March 30, 2011. (Doc. No. 26, Superseding Indictment.) The new indictment contained the original four counts, but also added a conspiracy charge under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(d). For purposes of RICO conspiracy, the "enterprise" was identified as Cuyahoga County, and the dual purposes of the conspiracy involved: (1) using the power of public officials to benefit Mohammad, his co-conspirators and their designees; and (2) promoting and concealing the racketeering activities of the conspirators. Specific schemes identified in this count included Mohammad's alleged 2003 attempt to bribe then Cuyahoga County Commissioner James Dimora to obtain the position of county administrator, and his alleged 2004 bribe to then Cuyahoga County Auditor Frank Russo in return for his position in the auditor's office.

On September 7, 2011, the government returned the Second Superseding Indictment. (Doc. No. 30.) This most recent indictment included all five counts, but added a new defendant, Qasem, to the RICO conspiracy charge. The RICO conspiracy charge, itself, was also modified. While the enterprise and the dual purposes of the conspiracy remained the same, the breadth of the conspiracy was expanded to include a wider range of racketeering activity. Now included within the reach of the RICO conspiracy charge were the activities of Mohammad and Qasem directed to obtaining county employment and benefits for their designees, whose numbers included "members of the same social organization to which Qasem and Mohammad belong." (*Id.* at ¶ 27.) According to the Second Superseding Indictment, the illegal activity identified in Counts Two through Four included some of the various acts committed and attempted in furtherance of the RICO conspiracy charged in Count One. (*Id.* at ¶ 35.).

This case has been continued on a number of occasions, due, in part, to defendant Qasem's multiple requests to be relieved of court-appointed counsel. On May 14, 2012, Qasem moved for a continuance on the ground that he had recently retained attorney Paul Mancino, Jr. to represent him in this matter, and that new counsel needed time to prepare. After conducting a hearing on the motion, the Court granted the continuance. A subsequent continuance was granted to accommodate Mohammad's counsel's trial schedule. Currently, the trial is set to commence on October 15, 2012 with jury selection. Though the deadline for filing pre-trial motions had passed, attorney Paul Mancino and his partner, Brett Mancino, sought and received leave to file additional pre-trial motions on behalf of Qasem. (*See* Doc. No. 123, and non-document order dated July 9, 2012.).

*Law and Analysis*

      1.     <u>Motion to Sever</u>

      Defendant Qasem requests that he and Mohammad be tried jointly on Count One, but that his co-defendant be tried separately on Counts Two through Five in a subsequent proceeding.[1] Qasem believes that a severance under Fed. R. Crim. P. 14 is necessary to avoid severe prejudice to him, and to ensure that the jury can make a reliable judgment as to his guilt or innocence.

      In cases involving a single defendant, Rule 8(a) permits joinder of multiple offenses in the same indictment or information if the offenses are "of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a). Rule 8(b) provides that multiple defendants may be charged together "if they are alleged to have participated in the same act or transaction, or the same series of acts or transactions, constituting an offense or offenses." Fed. R. Crim. P. 8(b). When defendants are joined for participating in the same series of actions, such as in a conspiracy, the defendants may be charged in one or more counts and all defendants need not be charged in each count. *See, e.g., United States v. Williams*, 553 F.3d 1073, 1079 (7th Cir. 2009) (joinder of codefendants charged with bank robbery proper because conspiracy charge linked the related charges). Where defendants are improperly joined, severance is mandatory. *United States v. Hatcher*, 680 F.2d 438, 441 (6th Cir. 1982). Even where defendants have been properly

---

[1] At various times in his motion, Qasem vacillates between requesting a severance of Count One from Two through Four or Two through Five. For purpose of the present motion, the Court presumes that Qasem seeks a severance of Count One from all remaining counts in the Second Superseding Indictment.

joined, however, a district court may still choose to sever one or more defendants, or one or more counts, if joinder "appears to prejudice a defendant or the government . . . ." Fed. R. Crim. P. 14(a). A decision to grant or deny a motion to sever under Rule 14(a) is left to the discretion of the trial court. *See United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002); *United States v. Anderson*, 89 F.3d 1306, 1312 (6th Cir. 1996).

"Under Rule 8(b) multiple defendants may be joined only if a sufficient nexus exists between the defendants and the single or multiple acts or transactions charged as offenses." *United States v. Johnson*, 763 F.2d 773, 775 (6th Cir. 1985).

> Rule 8(b) provides substantial leeway to prosecutors who would join racketeering defendants in a single trial. The rule permits joinder of defendants charged with participating in the same racketeering enterprise or conspiracy, even when different defendants are charged with different acts, so long as indictments indicate all the acts charged against each joined defendant (even separately charged substantive counts) are charged as racketeering predicates or as acts undertaken in furtherance of, or in association with, a commonly charged RICO enterprise or conspiracy.

*United States v. Efrasio*, 935 F.2d 553, 567 (3d Cir. 1991); *see United States v. Davis*, 707 F.2d 880, 883 (6th Cir. 1983) ("[W]here two defendants are charged with a RICO conspiracy it is not improper to join such defendants and include the individual illegal actions that constitute the pattern of racketeering alleged."); *United States v. Triumph Capital Group*, 260 F. Supp. 2d 432, 438 (D. Conn. 2002) (internal quotation and citation omitted) ("In essence, if the RICO charge is valid, an indictment charging the substantive crimes alleged as predicate acts along with the RICO claim satisfies the requirements for valid joinder under Rule 8(b)."); *see also United States v. Warner*, 690 F.2d 545, 551 (6th Cir. 1982) ("It is well settled that joinder is proper under Rule 8(b) where an indictment charges multiple defendants with participation in a single conspiracy.").

Here, Count 1 charges both defendants with RICO conspiracy. In addition to identifying the enterprise and the purposes of the conspiracy, paragraphs 21 to 34 allege a racketeering conspiracy to benefit the defendants, their co-conspirators, and designees, and paragraph 35 alleges that the defendants and others "committed and attempted to commit various acts in furtherance of the conspiracy" and further identifies predicate acts, which also form the basis for Counts Two through Four. Because the indictment properly charges a RICO conspiracy, with the substantive crimes also forming the predicate acts for the conspiracy, it satisfies Rule 8(b). *See Triumph*, 260 F. Supp. 2d at 438; *see, e.g., United States v. Carson,* 455 F.3d 336, 373 (D.C. Cir. 2006) ("The indictment alleged that all of these counts were overt acts in furtherance of the narcotics conspiracy and predicate acts in furtherance of the RICO conspiracy. This provided the necessary link to satisfy Rule 8(b)."); *United States v. Neace,* Case No. 07-20400, 2008 U.S. Dist. LEXIS 30029, at *8-*9 (E.D. Mich. Apr. 14, 2008) ("Thus, the RICO framework of this now-challenged indictment satisfies the basic requirement of Rule 8(b), in that the accused criminal conduct stems from 'the same series of acts or transactions constituting an offense.' ").

Because the defendants were properly joined, the Court now considers defendant Qasem's request for severance. "In order to prevail on a motion for [permissive] severance, a defendant must show compelling, specific, and actual prejudice from a court's refusal to grant the motion to sever." *United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005) (citing *United States v. Sherlin*, 67 F.3d 1208, 1215 (6th Cir. 1995)).

"As a general rule, persons jointly indicted should be tried together

because 'there is almost always common evidence against the joined defendants that allows for the economy of a single trial.' " *United States v. Lopez*, 309 F.3d 966, 971 (6th Cir. 2002) (quoting *United States v. Phibbs*, 999 F.2d 1053, 1067 (6th Cir. 1993)); *see United States v. Gardiner*, 463 F.3d 445, 472 (6th Cir. 2006); *United States v. Horton*, 847 F.2d 313, 317 (6th Cir. 1988) (internal citations omitted) ("There is a strong policy in favor of joint trials when charges will be proved by the same series of acts . . . and there is a presumption that the jury will be able to sort out the evidence applicable to each defendant and render its verdict accordingly.")) "Once defendants have been properly joined under Federal Rule of Criminal Procedure 8(b), a 'strong showing of prejudice is required to justify severance.' " *United States v. Hessling*, 845 F.2d 617, 619 (6th Cir. 1988) (quoting *United States v. Reed*, 647 F.2d 678, 689 (6th Cir.), *cert. denied*, 454 U.S. 837 (1981)); *see also United States v. Scaife*, 749 F.2d 338, 344 (6th Cir. 1984) (showing of prejudice must be made by demonstrating that the jury will be unable to separate and treat distinctively evidence that is relevant to each particular defendant on trial). Severance should be granted "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 539 (1993). "Even where the risk of prejudice is high, 'less drastic measures, such as limiting instructions, often will suffice to cure any risk of prejudice.' " *United States v. Driver*, 535 F.3d 424, 427 (6th Cir. 2008) (quoting *Zafiro*, 506 U.S. at 539); *see United States v. Mitchell*, 484 F.3d 762, 775 (5th Cir. 2007); *see, e.g., United States v. Fernandez*, 559 F.3d 303, 317 (5th Cir. 2009) (limiting instruction that each charge against each defendant was to be considered separately was sufficient to cure any

possible prejudice from joint trial).

Qasem posits that permissive severance is necessary owing to the fact that he is not charged in Counts Two through Five, nor is he alleged to have engaged in any of the conduct identified in these counts. In essence, he claims that he will be prejudiced by the spillover from the evidence against Mohammad on these additional counts, if the government prosecutes Counts Two through Five against Mohammad in his (Qasem's) trial. However, "[t]he fact that a defendant may have a better chance at acquittal if his trial were severed does not require the judge to grant his motion [to sever]: the defendant must show 'substantial,' 'undue' or 'compelling' prejudice." *United States v. DeFranco*, 30 F.3d 664, 669-70 (6th Cir. 1994) (quoting *United States v. Warner*, 971 F.2d 1189, 1195 (6th Cir. 1992)); *see Stanford v. Parker*, 266 F.3d 442, 458 (6th Cir. 2001). "[A] defendant does not suffer compelling prejudice[, however,] simply because much of the evidence at trial is applicable only to his co-defendants, even when the disparity is enormous." *United States v. Baker*, 432 F.3d 1189, 1236 (11th Cir. 2005); *see United States v. Causey*, 834 F.2d 1277, 1288 (6th Cir. 1987) ("a defendant is not entitled to a severance simply because the evidence against a codefendant is far more damaging than the evidence against him".).

While it is true that Qasem is charged in fewer counts, and it would appear that more time will be devoted and more evidence will be offered as to Mohammad's activities, such a disparity rarely provides a sufficient basis for severance. *See United States v. Gallo*, 763 F.2d 1504, 1525 (6th Cir. 1985) ("Merely because inflammatory evidence is admitted against one defendant, not directly involving another codefendant (and with which the other is not charged) does not, in and of itself, show substantial

8

prejudice in the latter's trial."); *see, e.g., Efrasio*, 935 F.2d at 568 ("Prejudice should not be found in a joint trial just because all evidence adduced is not germane to all counts against each defendant."); *Urban*, 404 F.3d at 775-76.

Nor has defendant Qasem demonstrated such a basis here. Aside from making some conclusory allegations of prejudice and a concern for guilt by association, Qasem has failed to identify any particular aspect of his co-defendant's case which could arguably adversely affect his presumption of innocence. He has also failed to demonstrate why instructions to the jury directing them to consider the evidence and charges against each defendant separately will not eliminate any possible prejudice. *See Walls*, 293 F.3d at 966 ("Juries are presumed to be capable of following instructions . . . regarding the sorting of evidence and the separate consideration of multiple defendants."); *see e.g, United States v. Fernandez*, 388 F.3d 1199, 1243 (9th Cir. 2004) (detailed instructions on the jurors' duty to treat the evidence separately as to each defendant sufficient to guard against possible prejudice). Without more, his spill-over prejudice argument must fail. *See Warner*, 971 F.2d at 1196 (The defendant "bear[s] the burden of making a strong showing of factually specific and compelling prejudice resulting from a joint trial.").

Qasem's argument is even less compelling, given the fact that all of the evidence relating to the overall RICO conspiracy (including the evidence relating to Counts Two through Five) would be admissible against Qasem in a separate trial on Count One, alone. *See United States v. DeCologero*, 530 F.3d 36, 54 (1st Cir. 2008) (internal quotation and citations omitted) ("[E]ven if the defendants had received separate trials, evidence of the murder would have been independently admissible against each, and it is far from clear that the potentially prejudicial impact of that evidence would have

made it inadmissible under Federal Rule of Evidence 403. This is why, in the context of conspiracy, severance will rarely, if ever, be required due to evidentiary spillover."); *Gardiner*, 463 F.3d at 473 ("Severance should not be granted where the same evidence is admissible against all defendants . . . ."); *United States v. Spinelli*, 352 F.3d 48, 55-56 (2d Cir. 2003) (denial of severance upheld in conspiracy case in part because much of the evidence against codefendant, though more substantial than that against defendant, would have been admissible in a separate trial); *Warner*, 971 F.2d at 1196 ("Where the same evidence is admissible against all defendants, a severance should not be granted."). Although it is alleged that Mohammad committed more predicate acts, all of the identified conduct is tied to the overall RICO conspiracy.

Qasem suggests, however, that "Count One is completely unrelated to Counts Two through Five. . . ." (Doc. No. 130 at 1, Page ID # 636.) The Court does not agree with this conclusion. Count Two (conspiracy to commit bribery concerning programs receiving federal funds) and Count Three (Hobbs Act conspiracy) relate to co-defendant Mohammad's alleged efforts to influence the awarding of county contracts, which go directly to the first purpose of the RICO conspiracy—to use the power of public office to benefit defendants, co-conspirators, and their designees. Count Four (tampering with a witness) and Count Five (false statements to law enforcement) relate to Mohammad's alleged efforts to conceal the activities of the RICO conspiracy and thwart the federal investigation, which go directly to the second charged purpose of the RICO conspiracy—to protect the RICO conspiracy from public exposure and possible criminal prosecution. For this reason, Qasem's argument that "Count One should be tried separately from Counts Two (2) through Five (5)," to the extent it challenges the joinder

of multiple offenses under either prong of Rule 8, is without merit. *See United States v. Saadey*, 393 F.3d 669, 678 (6th Cir. 2005) ("Judicial economy therefore dictates that multiple counts with overlapping proof of a common scheme to defraud be joined together."); *United States v. Irizarry*, 341 F.3d 273, 290 (3d Cir. 2003) (quoting *United States v. Eufrasio*, 935 F.2d 553, 570 (3d Cir. 1991) ("Rule 8(b) permits the joinder of RICO and non-RICO counts in one indictment when the offenses charged in the non-RICO counts are 'also charged as racketeering predicates in the RICO counts.' "); *United States v. Hirschfeld*, 964 F.2d 318, 323 (4th Cir. 1992) (quoting Fed. R. Crim. P. 8(a) ("Federal Rule of Criminal Procedure 8(a) permits joinder of separate offenses if they 'are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan.' ")).

Because the defendants were properly joined as RICO co-conspirators, much of the evidence offered at a trial limited to Count One would be the same as that offered in a separate proceeding against Mohammad on Counts Two through Five, and less drastic measures, such as limiting instructions, should be sufficient to protect against any possible prejudice from a joint trial, defendant Qasem's motion to sever is DENIED. *See, e.g, Zafiro*, 506 U.S. at 541 (instructions explaining the need to consider each charge and each individual separately "sufficed to cure any possibility of prejudice"); *Urban*, 404 F.3d at 776 (instruction to compartmentalize the evidence sufficient); *see also United States v. Mays*, 69 F.3d 116, 120 (6th Cir. 1995) (recognizing the "strong policy favoring joint trials" and "the presumption of the validity of curative instructions").

2.      Motion for a Bill of Particulars

By his second motion, defendant Qasem seeks particularity as to the following: (1) the "things of value" provided to James Dimora and Frank Russo; (2) the identity of other co-conspirators known to the grand jury, but not otherwise identified in the indictment, along with the unlawful acts alleged to have been committed by each co-conspirator; and (3) the dates and times that defendant Qasem committed each unlawful act alleged, including the instances where he served as an "intermediary" as charged in Count 1.

Rule 7(f) provides for the filing of a request for a bill of particulars. Fed. R. Crim. P. 7(f). "The function of a bill of particulars is 'to minimize surprise and assist [the] defendant in obtaining information needed to prepare a defense and to preclude a second prosecution for the same crimes.' " *United States v. Crayton*, 357 F.3d 560, 568 (6th Cir. 2004) (quoting *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993)). "Thus, the test in ruling on a motion for a bill of particulars is whether providing such details is necessary to the preparation of the defense and avoidance of prejudicial surprise." *United States v. Musick*, 291 Fed. App'x 706, 724 (6th Cir. 2008) (citing FEDERAL PRACTICE & PROCEDURE § 129 (3d ed. 1999)); s*ee United States v. Matos-Peralta*, 691 F. Supp. 780, 791 (S.D.N.Y. 1988) ("The ultimate test must be whether the information sought is necessary, not whether it is helpful.").

"A bill of particulars 'is not meant as a tool for the defense to obtain detailed disclosure of all evidence held by the government before trial[,]' " *Crayton*, 357 F.3d at 568 (quoting *Salisbury*, 983 F.2d at 1375), nor may a defendant use a bill of particulars to discover the government's legal theory of the case. *United States v.*

*Gabriel*, 715 F.2d 1447, 1449 (10th Cir. 1983); *United States v. Marks*, 364 F. Supp. 1022, 1030 (E.D. Ky. 1973), *aff'd*, 520 F.2d 913 (6th Cir. 1975), *rev'd on other grounds*, 430 U.S. 188 (1977).

In addition, "[n]o bill of particulars should be issued where the indictment is sufficiently detailed." *United States v Mayhew*, 337 F. Supp. 2d 1048, 1061 (S.D. Ohio 2004). "An indictment is sufficiently detailed when it fairly informs the defendant of the charges against him which he must defend and enables him to plead an acquittal or conviction in bar of future prosecution for the same offense." *Id.* (citations omitted). Further, the level of detail in the indictment can be a basis for denying the motion for a bill of particulars, *Salisbury*, 983 F.2d at 1375, and "a defendant is not entitled to a bill of particulars with respect to information which is available through other sources." *United States v. Paulino*, 935 F.2d 739, 750 (6th Cir. 1991), *suspended on other grounds by statute*, *United States v. Caselorente*, 220 F.3d 727 (6th Cir. 2000). Ultimately, the decision to require a bill of particulars is left to the discretion of the trial court. *See Musick*, 291 Fed. Appx. at 724; *United States v. Perkins*, 994 F.2d 1184, 1190 (6th Cir. 1993).

### *Things of Value*

Qasem seeks more detailed information regarding the "things of value" that defendants and other co-conspirators are alleged to have given Dimora and Russo. The government objects to this request, insisting that Qasem is impermissibly asking the government to disclose its theory of the case, and to discuss, in detail, every piece of evidence that supports its theory. It is also the government's position that the indictment, along with discovery, is sufficiently detailed to apprise the defendants of the charges. *See,*

13

*e.g., United States v. Maricle*, Criminal Action No. 6:09-16-S-DCR, 2009 U.S. Dist. LEXIS 109199, at *5-*8 (E.D. Ky. Nov. 20, 2009) (request for the "whens, wheres, and hows" the crimes were committed was improper where the indictment and discovery provided sufficient detail and information). With respect to discovery, the government maintains that it has already provided Qasem with extensive discovery which sets forth, in detail, the information he seeks. In fact, the government represents that, in a meeting on June 13, 2012, government attorneys met with Qasem's counsel and "identified the most relevant portions of the discovery, described the anticipated witness testimony that will form a large part of the Government's case-in-chief, and provided a copy of the actual trial exhibits culled from the long since provided discovery." (Doc. No. 127 at 5, Page ID # 626.)

The Court agrees with the government that this first request is really one for disclosure of evidentiary materials, which is not a proper use of a bill. *See, e.g., Frederick v. United States*, 163 F.2d 536 (9th Cir. 1947) (request for specifics regarding the names of persons from whom ration points were acquired and method of payment was really an improper request for complete discovery of evidentiary matters). The Court is also generally familiar with the scope and breadth of the discovery that has been produced to defendants in this case, and in related public corruption cases. The discovery (mostly in a searchable electronic format) is extensive, and consists of documents and recordings of wiretap conversations. Defendant Qasem has not even suggested that the information he seeks with respect to how the conspiracy was carried out was not otherwise provided in discovery, or was not identified by the government in its meeting with counsel in June. Because Qasem has failed to make a showing that the information

14

is necessary to prepare a defense or avoid surprise, or that he has no means to ascertain the requested information, the request is denied. *See United States v. Gorel*, 622 F.2d 100, 104 (5th Cir. 1979)

### Identity of Co-conspirators

Qasem also seeks the identity of any co-conspirators known to the grand jury, and the acts they are alleged to have committed. It is well settled in this circuit, however, that "the Government is not required to furnish the name of all other co-conspirators in a bill of particulars." *Crayton*, 357 F.3d at 568 (citing *United States v. Rey*, 923 F.2d 1217, 1222 (6th Cir. 1991). Further, "a defendant is not entitled to a list of the names and addresses of the government's witnesses." *Perkins,* 994 F.2d at 1190. In *Rey,* the Sixth Circuit explained:

> A defendant may be indicted and convicted despite the names of his co-conspirators remaining unknown, as long as the government presents evidence to establish an agreement between two or more persons, a prerequisite to obtaining a conspiracy conviction. [internal citations omitted] As long as the indictment is valid, contains the elements of the offense, and gives notice to the defendant of the charges against him, it is not essential that a conspirator know all other conspirators. "It is the grand jury's statement of the 'existence of the conspiracy agreement rather than the identity of those who agree' which places the defendant on notice of the charge he must be prepared to meet."

*Rey*, 923 F.2d at 1222-23 (quoting *United States v. Piccolo*, 723 F.2d 1234, 1238-39 (6th Cir. 1983) (citations omitted)). A bill for the purpose of identifying unnamed co-conspirators is, therefore, not warranted.

### Dates and Locations of the Unlawful Conduct

The final set of requests presents a closer call. Count 1 provides that the RICO conspiracy started "in or around 1998 and continu[ed] to in or around December

2008 . . . ." (Doc. No. 30, Second Superseding Indictment at ¶ 24, Page ID # 202.) Qasem requests information relating to each date during the ten-year conspiracy in which Qasem is alleged to have committed an unlawful act. He also seeks information as to the dates and times he is alleged to have served as an "intermediary" in furtherance of the conspiracy, as charged in paragraph 31 of the indictment.

The government objects to the request, suggesting that defendant Qasem misunderstands the nature of the charge against him. The government underscores the fact that Qasem is charged with conspiracy, and that, as a result, the government is not required to prove that he committed *any* predicate acts.[2] *See United States v. Glecier*, 923 F.2d 496, 500 (7th Cir. 1991) (citations omitted) (an indictment under § 1962(d) does not have to allege either "overt acts" or "specific predicate acts that the defendant agreed personally to commit"). Additionally, with respect to the allegation that Qasem served as an "intermediary" at times, the government notes that it is under no obligation to identify each and every fact that supports its case against a defendant, or each and every overt act that might be proven at trial.

The law is clear that "a defendant is not entitled to discover all the overt acts that might be proven at trial." *United States v. Salisbury*, 983 F.2d 1369, 1375 (6th Cir. 1993) (citation omitted); *see United States v. Martin*, No. 86-1663, 1987 U.S. App. LEXIS 9444, at *7-*8 (6th Cir. 1987) (a bill of particulars is unnecessary "in a

---

[2] The elements of RICO conspiracy are: (1) that the defendant knowingly agreed to conduct or participate, directly or indirectly, in the conduct of the affairs of the charged enterprise through a pattern of racketeering activity; (2) that an enterprise would be established as alleged in the indictment; (3) that the enterprise would be engaged in, or the activities would affect, interstate or foreign commerce; and (4) that the defendant would be employed by, or associated with, the enterprise. *See* 18 U.S.C. § 1962(d); *United States v. Glecier*, 923 F.2d 496, 500 (7th Cir. 1991).

conspiracy case where the government is not required to disclose all overt acts alleged to have occurred in furtherance of the conspiracy"); *United States v. Bussell*, No. 3:10-CR-159, 2011 U.S. Dist. LEXIS 135495, at *18-*19 and *30 (E.D. Tenn. Nov. 23, 2011) (defendant not entitled to information relating to the specific firearms used, or the amount of drugs involved). "This is particularly true in a conspiracy case in which the Government is not required to disclose all overt acts alleged to have occurred in furtherance of the conspiracy." *United States v. Hayes*, No. 88-5967, 1989 U.S. App. LEXIS 13919 884, at *8-*9 (6th Cir. Sept. 14, 1989).

While the Court agrees with the government's observations as to what it need not prove, it still *must* prove that Qasem joined the conspiracy. *See Glecier*, 923 F.2d at 500. Counts Two through Four identify certain overt acts that defendant Mohammad allegedly took in furtherance of the RICO conspiracy identified in Count 1. These counts, therefore, provide Qasem with some guidance as to the nature of the conspiracy. They do not, however, begin to demonstrate how and when Qasem joined the conspiracy. Count 1 generally identifies conduct that Qasem allegedly engaged in that would, if proven, demonstrate his decision to the join the conspiracy. The conspiracy alleged in Count 1, however, spanned a decade, and it is unclear from the indictment the circumstances under which Qasem joined the conspiracy, and when this decision was made. The Court finds that this puts defendant Qasem at a disadvantage.

The Sixth Circuit has approved the provision of the dates that a defendant is alleged to have conspired. *See, e.g., Rey*, 923 F.2d at 1222 (observing that the defendant knew the relevant dates in holding that he was not entitled to know the names of co-conspirators). "As a general rule, an opening date of a conspiracy is sufficient. Yet,

17

in complex cases involving lengthy time periods, courts have required more detailed disclosures . . . ." *United States v. Adan*, No. 3:10-CR-00260, 2012 U.S. Dist. LEXIS 27497, at *13 (M.D. Tenn. Mar. 1, 2012) (citations omitted) (ten year conspiracy over four states required further clarification by way of particularity as to the dates and places where each defendant joined the conspiracies and committed the alleged offenses); *United States v. McGhee*, No. 3:06-CR-19, 2007 U.S. Dist. LEXIS 32096, at *8-*9 (E.D. Tenn. May 1, 2007) (motion for bill of particulars granted as to the date when the defendant entered the conspiracy and the dates and locations of the alleged criminal activity where the conspiracy was alleged to have lasted five years).

Given the length of the alleged conspiracy—ten years—the level of complexity of the numerous schemes, and the number of participants, the Court concludes that defendant Qasem's motion for a bill of particulars should be GRANTED IN PART to require the government to identify the date and place where defendant Qasem joined the conspiracy, as well as the dates and places that he is alleged to have committed any offenses that were in furtherance of the conspiracy.

3.      <u>Motion to Transfer</u>

Chapter 28 of the United States Code § 115 divided Ohio into two judicial districts, known as the Northern and Southern Districts of Ohio. The Northern District is further divided into two divisions: the Eastern Division and the Western Division. The Eastern Division comprises a number of counties, including Cuyahoga and Summit Counties. 28 U.S.C. § 115(a)(1). This Court, which resides in the Northern District of

Ohio, Eastern Division, holds its proceedings in the federal courthouse in Akron, Ohio, which is located in Summit County.

The Juror Selection Plan, adopted August 8, 1997, divides the Northern District of Ohio into four jury divisions, "each to serve an area surrounding one of the four courthouses located in the district: Akron, Cleveland, Youngstown, and Cleveland." *United States v. Traficant*, 209 F. Supp. 2d 764, 774 (N.D. Ohio 2002). Each jury division has its own master wheel and draws from different counties. For example, the Akron jury division draws its potential jurors from the following counties: Carroll, Holmes, Portage, Stark, Summit, Tuscarawas, and Wayne. In contrast, the Cleveland branch of the Eastern Division calls its prospective jurors from Ashland, Astabula, Crawford, Cuyahoga, Geauga, Lake, Lorain, Medina, and Richland.

In his final pre-trial motion, defendant Qasem seeks to have this case tried in the federal courthouse in Cleveland, Ohio, which, in turn, is located in Cuyahoga County. He maintains that if he is tried in Akron, his right to an impartial jury will be violated because none of the prospective jurors called for jury service will be from Cuyahoga County. As support for his motion, he cites to the Sixth Amendment, the Jury Selection and Services Act (JSSA), 28 U.S.C. 1861, *et seq.*, and the Equal Protection Clause.

"Although the Sixth Amendment and Fed. R. Crim. P. 18 require that a defendant's trial take place in the *district* where the crime was committed, there is no constitutional or statutory requirement that a defendant's trial take place in a specific courtroom or *division* within a federal judicial district." *United States v. Erwin*, 155 F.3d 818, 824 (6th Cir. 1998) (en banc) (emphasis in original); *see United States v. McKinney*,

53 F.3d 664, 673 (5th Cir. 1995) (citing, among other authority, *United States v. Anderson*, 328 U.S. 699, 704-05 (1991)); *United States v. Betancourt,* 734 F.2d 750, 756 (11th Cir. 1984); *see also United States v. Lipscomb*, 299 F.3d 303, 339 (5th Cir. 2002) ("There is no basis for inferring the existence of a constitutional right to trial within the division where a criminal defendant lives or where a crime was committed.") "The location of a criminal trial within a district, as well as the decision whether to transfer a case to a different division, is a matter committed to the sound discretion of the trial court." *United States v. Castleman*, No. 2:08-cr-20420-JPM-cgc, 2010 U.S. Dist. LEXIS 15485, at *12-*13 (W.D. Tenn. Feb. 4, 2010) (citing *United States v. Lewis*, 504 F.2d 92, 98 (6th Cir. 1974)).

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law . . . ." U.S. CONST. AMEND. VI. The Supreme Court has held that "the selection of a petit jury from a representative cross section of the community is an essential component of the Sixth Amendment right to a jury trial."[3] *Taylor v. Louisiana*, 419 U.S. 522, 528 (1975). Likewise, the JSSA articulates a "policy of the United States that all litigants in Federal courts entitled to trial by jury shall have the right to grand and petit juries selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861.

---

[3]To establish that the jury selection system violates the Sixth Amendment, a defendant must prove: (1) the group allegedly excluded from the jury pool is "distinctive;" (2) the representation of this group in venires from which the juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to systematic exclusion of this group in the jury selection process. *Duren v. Missouri,* 439 U.S. 357, 364 (1979).

Qasem argues that the "fair cross section" requirement of the Sixth Amendment and the JSSA mandates that every jury be chosen from a fair cross section of the *entire* Northern District of Ohio, Eastern Division. Such an argument was rejected by a panel of the Sixth Circuit in *United States v. Davis*, 27 Fed. App'x 592, 597 (6th Cir. 2001). In denying the defendant's challenge to the jury comprised of citizens from the counties surrounding Akron, the place where the trial was held, the Court found that:

> [b]ecause Cleveland and Akron are both within the Northern District of Ohio, Davis's trial could properly be held in Akron. Additionally, because of that venue, the jury pool need not necessarily include anyone from Cuyahoga County, a political subdivision within the Cleveland Division of the Northern District. The non-Cleveland draw for the defendant's jury thus violated neither federal constitutional nor statutory protections.

*Id.; see Ruthenberg v. United States,* 245 U.S. 480, 482 (1918) (according to the plain language of the Sixth Amendment, the right to an impartial jury is satisfied by a jury drawn from a geographical subdivision of a judicial district).

A similar argument was considered and rejected in *Traficant*. There, another court in the Northern District of Ohio found that "[t]he language of the Sixth Amendment and of the JSSA recognizes the right of district courts to establish jury divisions within a district. The validity of jury divisions consistently has been acknowledged by federal courts." 209 F. Supp. 2d at 778 (collecting cases holding that a jury pool need not include jurors from the division where the offense was committed nor from the entire division). The court concluded that because the Northern District of Ohio is divided into four jury divisions, the defendant had a right to have his jury selected from a fair cross section of the jury division that corresponded to the courthouse where his jury trial was to take place. *Id.* at 779 (noting that the fair cross section applies "*within* jury

divisions, not *between* jury divisions"). *Accord United States v. Cannady,* 54 F.3d 544, 547 (9th Cir. 1995) ("[T]here is no constitutional right to a jury drawn from an entire judicial district, rather than from one division of the district.); *United States v. Johnson*, 21 F. Supp. 2d 329, 334 (S.D.N.Y. 1998) ("It is well-settled that neither the Constitution nor the Jury Act requires that jurors be drawn from an entire district.") Likewise, because the present trial is scheduled to take place in Akron, Qasem and his co-defendant are entitled to select a jury from a fair cross section of the community residing in the counties that comprise the Akron Jury Division.

Qasem also attempts to mount an equal protection challenge to having his case heard by jurors that reside exclusively within the counties that make up the Akron Jury Division.  Noting that the juror selection plan provides for the selection of grand jurors drawn from the entire Eastern Division, while petit jurors are selected from the corresponding jury division, defendant Qasem argues that there is no rational basis for the distinction in how these two types of jurors are selected. (Doc. No. 124 at 2-3, Page ID # 603-04.).

Both the Fifth and Sixth Amendments require a defendant to prove that the jury panel selection procedures systematically under-represent a distinctive group in the population from which the jury panel is drawn.[4] *See Castaneda v. Partida*, 430 U.S. 482,

---

[4] Under the Sixth Amendment, whether a group is distinctive for fair cross section purposes requires a showing: "(1) that the group is defined and limited by some factor (i.e., that the group has a definite composition such as by race or sex); (2) that a common thread or basic similarity in attitude, ideas, or experience runs through the group; and (3) that there is a community of interest among members of the group such that the group's interests cannot be adequately represented if the group is excluded from the jury selection process." *See Ford v. Seabold*, 841 F.2d 677, 681-82 (6th Cir. 1988). As part of the *prima facie* case required to establish an equal protection violation, a defendant must show that the excluded group is "a recognizable, distinct class, singled out for different treatment under the laws . . . ." *Castaneda v. Partida*, 430 U.S. 482, 494 (1977).

494 (1977) (finding a Fifth Amendment right); *Duren v. Missouri*, 439 U.S. 357, 364 (1979) (finding a Sixth Amendment right). Whether his argument is considered in the context of the Fifth or Sixth Amendment, however, his equal protection claim must fail.

Although the Sixth Circuit has yet to address this issue, courts within this district have concluded that "residents of a geographic area are not a distinct, cognizable group based on their place of residence alone." *Traficant*, 209 F. Supp. 2d at 780; *see United States v. Patel*, No. 11-CR-20468, 2012 U.S. Dist. LEXIS 74409, at *12 (E.D. Mich. May 30, 2012). Courts in other jurisdictions are in accord. *See United States v. Raszkiewicz*, 169 F.3d 459, 467 (7th Cir. 1999) ("reservation Indians," as opposed to "urban Indians" did not qualify as a distinctive group for Sixth Amendment cross section analysis); *Zicarelli v. Deitz*, 633 F.2d 312, 320 (3d Cir. 1980) (residents of a geographical group cannot be considered a distinctive group for cross section analysis unless the group is "profoundly culturally distinct"); *United States v. Butera*, 420 F.2d 564, 572 (1st Cir. 1970) (holding that residents of a particular county do not qualify as a "distinct group" for purposes of fair cross section analysis), *overruled on other grounds*, *Barber v. Ponte*, 772 F.2d 982, 998 (1st Cir. 1985); *see also  United States v. Conant*, 116 F. Supp. 2d 1015, 1023 (E.D. Wis. 2000) (geographic location of residents in relation to the courthouse was a legitimate basis for excluding certain citizens from serving in a particular courthouse). Rather, the juror's place of residence is only relevant to the equal protection analysis to the extent it serves as a "proxy for another, recognized distinct group." *Traficant*, 209 F. Supp. 2d at 782. Qasem fails to even identify a protected class for which the residents of Cuyahoga County are proxy. His equal protection claim, therefore, is legally deficient. *See, e.g., Ford v. Seabold,* 841 F.2d 677, 686-87 (6th Cir.

1988) (plaintiff was not able to make out equal protection claim because he was not a member of a protected class); *United States v. Gould*, 508 F. Supp. 2d 896, 905 (D.N. Mex. 2007) (equal protection claim fails because defendants were unable to identify a distinct, cognizable group "capable of being singled out for discrimination"). Because the Court's jury selection plan violates neither constitutional nor statutory law, defendant Qasem's motion to transfer the case is DENIED.

*Conclusion*

For all of the foregoing reasons, defendant Qasem's motions to sever and to transfer are DENIED, and his motion for a bill of particulars is GRANTED in part and DENIED in part. The government shall have until 10:00 a.m. on October 1, 2012 to either identify the date and place where defendant Qasem is alleged to have joined the conspiracy, as well as the dates and places that he is alleged to have committed any offenses that were in furtherance of the conspiracy, or file a brief explaining why it cannot supply this information.

**IT IS SO ORDERED**.

Dated: September 27, 2012

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**