**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO. 1:10-cr-389-1 |
| | ) | |
| | ) | |
| PLAINTIFF, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | OPINION AND ORDER |
| SAMIR MOHAMMAD, | ) | |
| | ) | |
| | ) | |
| DEFENDANT. | ) | |

This matter comes before the Court upon a writ, various motions, and other filings of the defendant, Samir Mohammad ("Mohammad"), to modify, clarify and correct the record with respect to his restitution obligation for the GIS/Broma scheme for which he was convicted as his restitution obligation pertains to other defendants, specifically, Frank P. Russo ("Russo"), Daniel P. Gallagher ("Gallagher"), John Kevin Kelley ("Kelley"), Kevin Payne ("Payne"), and Anthony Ma ("Ma"), and with whom he believes he should have been held joint and severally liable for the restitution obligation. (Doc. Nos. 205 (withdrawn 7/28/2017), 235, and 241.) Through his various motions and filings, Mohammad requests that he be discharged from any further restitution payment obligations. (*See, e.g.*, Doc. No. 235, at 1.)

The United States of America has filed a number of responses largely opposing the relief requested, but it has agreed that Mohammad's restitution obligation should be reduced in the amount paid by Gallagher, whose restitution payment involved the same scheme, and who should have been ordered to pay on a joint and several basis with Mohammad. (Doc. Nos. 206, 209, 239, 242, and 247.) Over the time that this dispute has been pending, the Court has periodically

conducted conference calls with the parties to see if the parties could reach a resolution regarding the dispute, to no avail.

By way of brief background, and to help put the complexity of the issue in context, in 2007, the Federal Bureau of Investigation launched a large-scale, multi-year probe into potential public corruption in Cuyahoga County, Ohio. The focus of the investigation was allegations that one of the county's three commissioners, James C. Dimora, along with the county auditor, Russo, had orchestrated a conspiracy whereby the two men would benefit themselves, their co-conspirators, and their designees, by using the power and authority of their public offices to elicit monetary and in-kind bribes in exchange for public contracts and employment with the County.

The investigation prompted the arrests of over 60 individuals, including other public officials, judicial officers, and private businessmen, and resulted in the filing of numerous indictments. Mohammad, Russo, Gallagher, Kelley, Payne, and Ma were among the public officials who were named as defendants in what is generally referred to as the Cuyahoga County corruption cases. Gallagher, Payne, and Kelley were charged, along with Brian Schuman, in Case No. 1:09-cr-272; Russo was charged separately in Case No. 1:10-cr-384; Ma was charged separately in Case No. 1:10-cr-232; and Mohammad was charged with a second individual, Hamdi "Sam" Qasem, in Case No. 1:10-cr-389.

With the benefit of a plea agreement, Mohammad ultimately entered guilty pleas to various conspiracy and fraud-related crimes charged in the indictment. (Minutes of Proceeding [non-document], 10/15/2012; Doc. No. 157 (Mohammad Plea Agreement).) The plea agreement provided that Mohammad would be subject to restitution and that he would immediately forfeit, under 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), the amount of $50,000 at the time of sentencing. (Doc. No. 157 ¶¶ 28, 30–31.) The agreement further provided that the $50,000

forfeited amount would be credited against any restitution Mohammad owed. (*Id*. ¶ 32.)

On January 4, 2013, the Court conducted a sentencing hearing, during which the Court noted that the government was seeking restitution in the amount of $190,000.00 on a joint and several basis with other co-conspirators and asked the government to identify the relevant co-conspirators. (Doc. No. 213 (Transcript of Sentencing Hearing), at 12, 15.) The government's counsel confirmed that restitution was to be imposed on a joint and several basis with Mohammad's co-conspirators in the GIS/Broma scheme and identified the following individuals: Russo, Kelly, Gallagher, Payne, and Ma. (*Id*. at 13–16.) The Court underscored the ramifications (and potential pit falls) of a joint and several restitution order, including the reality that any individual conspirator could end up being responsible for the entire amount if his co-conspirators are unable to contribute. (*Id*. at 14.) at 14).)[1]

At the conclusion of the sentencing hearing, the Court sentenced Mohammad to a term of imprisonment of 46 months, followed by 3 years of supervised release. (Minutes of Proceedings [non-document], 1/4/2013; Doc. No. 175 (Mohammad Judgment).) As part of his sentence, Mohammad was ordered to pay $190,000.00 in restitution. Consistent with the parties' agreement and the discussions during the sentencing hearing, the judgment provided that Mohammad's restitution obligation was to be joint and several with Mohammad's co-conspirators in the GIS/Broma scheme (charged in Counts Two and Three of the Superseding Indictment returned in

[1] Specifically, the Court advised the parties as follows:

> So there is one thing to say about what the expectation is, but then the reality of it and the final analysis might not meet that expectation, and I think everyone should understand that, that once that order goes on, it's joint and several, and if for some reason the other defendants involved relative to those counts, and that – I guess those monies, the $190,000 in restitution as it pertains to Counts 2 and 3, if for some reason the $190,000 restitution amount isn't paid in full by their collective contributions, then there would be an outstanding portion of it that could be attributable and collected from Mr. Mohammad.

(*Id*.)

the present case)—Russo, Kelley, Gallagher, Payne, and Ma. (Doc. No. 175, at 5–7.) Mohammad did not object to the imposition of restitution on this basis or otherwise appeal this Court's judgment.

Mohammad now complains that, despite the Court's order that his restitution would be joint and several with the aforementioned individuals, the judgment entries and restitution orders in his co-conspirators' cases did not reflect this arrangement. (Doc. No. 235, at 9.) Given the complexity of the underlying federal investigation and the number of criminal schemes involved, as well as the number of defendants and co-conspirators involved spread out over many cases before different judges, it is not surprising that the judgment entries and restitution orders are not entirely consistent. Moreover, as will be more fully discussed, some of Mohammad's co-conspirators died before they were sentenced. Nevertheless, the Court agrees that Mohammad is entitled to receive some contribution from his co-conspirators to the extent that they have paid or will pay restitution to Cuyahoga County as a result of their participation in the GIS/Broma scheme.

As previously noted, the $50,000.00 Mohammad forfeited at the time of sentencing was credited against his restitution obligations, as were the payments Mohammad has personally made toward the amount. Additionally, during the course of these proceedings, the Court instructed the government to determine the contributions made by Mohammad's co-conspirators relative to the GIS/Broma scheme. (Minute Order, 8/15/2023.) The government determined that Gallagher completely discharged his $82,303.03 restitution obligation and that $40,303.03 of the total amount paid was attributable to the GIS/Broma scheme. (Doc. No. 209, at 2–3.) The government requested that the Court credit Mohammad with $40,303.03 against his restitution obligation. (*Id.* at 2.) The Court agrees that this amount should be credited against Mohammad's restitution obligation.

That leaves any applicable contributions made by co-conspirators Russo, Ma, and Kelley. It is the Court's understanding that Russo made payments toward his $6,961,905.00 restitution obligation (for the numerous schemes in which he was involved) before his death in 2022, and that a portion of each payment was designated by the Clerk of Court's Office as applying toward the GIS/Broma scheme. (*See* Case No. 1:10-cr-384, Doc. No. 58 (Russo Second Amended Judgment), at 6.) Mohammad was credited with these apportioned payments, small though they may have been, and he is entitled to no further adjustment of the balance he owes from Russo's payments.[2]

Defendants Ma and Payne each died before they could make any restitution payments. Defendant Ma entered into a plea agreement on August 2, 2010. (Case No. 1:10-cr-232, Doc. No. 11 (Ma Plea Agreement).) He died on November 5, 2010, before a sentencing hearing could be set, and his case was dismissed. (Doc. No. 14-1 (Ma Death Certificate); Doc. No. 15 (Order Dismissing Charges).) Defendant Payne likewise entered into a plea agreement but died before sentencing, and his case was also dismissed. (Case No. 1:09-cr-272, Doc. No. 41-1 (Payne Death Certificate); Doc. No. 42 (Order Dismissing Charges).)[3] Since each man died before they were sentenced and their cases were dismissed because of their deaths, they could not have been assessed any restitution obligations or required to contribute to the amount assessed against Mohammad. As the Court cautioned Mohammad at his sentencing, one of the realities of a joint and several restitution order is that a single defendant may be held responsible for the full amount of the conspiracy, even if his co-conspirators are later determined to be unable to contribute. *See United States v. Rozin*, 664 F.3d 1052, 1066 (6th Cir. 2012) (holding that a defendant guilty of

[2] Given the number of schemes in which Russo was involved, only a portion of each payment was applied to the GIS/Broma scheme and therefore counted toward Mohammad's restitution obligation. In fact, the amount of each monthly payment made by Russo during his lifetime that was attributed to the GIS/Broma scheme ranged from $.68 to $2.74.

[3] Defendant Payne died on November 21, 2010 and the charges against him were dismissed on December 16, 2010. (*See id*.)

conspiracy could be held joint and severally liable for the full restitution amount, including taxes owed by a deceased co-defendant); *see also United States v. Stone*, 110 F.3d 65 (Table), 1997 WL 159371, at *2 (6th Cir. Apr. 3, 1997) (finding that there is no inherent unfairness in imposing joint and several liability on co-conspirators, even if some co-conspirators are indigent or unable to pay).

The final co-conspirator mentioned in connection with Mohammad's restitution obligation is Kelley. Like Mohammad and the other identified co-conspirators, Kelley ultimately pled guilty to participating in a fraudulent conspiracy involving, among other schemes, the GIS/Broma scheme. (Case No. 1:09-cr-272-1, Doc. No. 85 (Kelley Plea Agreement); Doc. No. 86 (Kelley Judgment); Minutes of Proceeding [non-document], 12/20/2013; *see generally* Doc. No. 2 (Information).) Kelley was ordered to pay $655,045.00 in restitution, with $527,773.00 designated for payment to Cuyahoga County, the victim of several charged schemes, including GIS/Broma.[4] (Doc. No. 86, at 6–7.) As it did with respect to payments made by Gallagher, the Court instructs the government to calculate the amount of restitution paid by Kelley in Case No. 1:09-cr-272 that is attributable to the GIS/Broma scheme, and should, therefore, be credited against the restitution Mohammad owes in the present case.

Accordingly, for the foregoing reasons, Mohammad's motions and requests for relief from his restitution obligation (Doc. Nos. 205, 235, 241) are denied, except as follows:

> The Court's Finance Department will be directed to credit Mohammad with the $40,303.03 paid by Daniel Gallagher in Case No. 1:09-cr-272-03 and attributable to the GIS/Broma scheme; and
>
> The government is directed to file, by September 29, 2023, a supplement calculating what percentage of the restitution payments being made by John Kevin Kelley in Case No. 1:09-cr-272 to Cuyahoga County are attributable to the

[4] On December 21, 2202, the Court modified Kelley's conditions of release by providing that his supervision would expire on April 25, 2021, with the unpaid balance of his restitution remaining. (Case No. 1:09-cr-272-1, Doc. No. 138.)

GIS/Broma scheme (hereinafter "Kelley's GIS/Broma restitution payments"). As to the amounts already remitted by Kelley in restitution to Cuyahoga County, Mohammad will be credited for Kelley's GIS/Broma restitution payments. Moving forward, the Clerk of Court will be directed to continue to credit the same portion of Kelley's restitution payments to Cuyahoga County towards Mohammad's $190,000 restitution obligation as a result of Mohammad's participation in the GIS/Broma scheme. (*See, e.g.*, Doc. No. 209.)

Upon receiving the information from the government, the Court will issue a final order clarifying restitution.

**IT IS SO ORDERED**.

Dated: September 14, 2023

**HONORABLE SARA LIOI**
**CHIEF JUDGE**
**UNITED STATES DISTRICT COURT**